UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

H&R Block Enterprises, Inc.,

    Plaintiff,

v.                                                      Civ. No. 06-608 (JNE/JJG)
                                                       ORDER

Mary Short and
AAA Tax Specialists, Inc.,

    Defendants.

W. Terrence Kilroy, Esq., Shughart Thomson & Kilroy, PC, and David A. James, Esq., Halleland Lewis Nilan & Johnson PA, appeared for Plaintiff H&R Block Enterprises, Inc.

Martin D. Kappenman, Esq., and James E. Blaney, Esq., Moore, Costello & Hart, appeared for Defendants Mary Short and AAA Tax Specialists, Inc.

H&R Block Enterprises, Inc. (H&R Block), brought this action against Mary Short and AAA Tax Specialists, Inc., (collectively, Defendants) alleging breach of contract against Short and tortious interference with contractual relations and misappropriation of trade secrets against Defendants. By Order dated March 2, 2006, the Court granted in part and denied in part H&R Block's motion for a preliminary injunction on its breach of contract claim. H&R Block now moves for summary judgment on its breach of contract claim. For the reasons set forth below, the Court grants in part and denies in part H&R Block's motion.

## I.    BACKGROUND

H&R Block provides tax preparation and related services to companies and individuals throughout the United States. Short was employed as a tax preparer for H&R Block in its St. Paul district for approximately twenty-four years. During her employment, Short executed a

Premium Tax Service Tax Professional Employment Agreement (Employment Agreement).[1] The Employment Agreement contains covenants restricting Short's ability to compete with H&R Block, solicit H&R Block clients, and solicit H&R Block employees after departure from H&R Block.

On December 31, 2004, Short resigned from H&R Block. Less than one month later, on January 26, 2005, she formed AAA Tax Specialists (AAA). Days or weeks after she left H&R Block, Short created a list of clients that she had serviced while working at H&R Block. From that list, Short created approximately 170 mailing labels. On or about February 9, 2005, she sent postcards to some of her former H&R Block clients. The postcards stated:

> After being involved in your personal finances for these years, I wanted to let you know that I have ended my relationship with H&R Block.
>
> I am sorry for any inconvenience to you.
>
> I had too many problems with policies and pricing, as well as personal issues, which caused me to find employment elsewhere.
>
> If you have any questions or need help, please feel free to call me at 651-489-6939.
>
> Mary Short

In 2005, at least 90 out of 127 tax returns prepared at AAA were for Short's former H&R Block clients. In 2006, over half of Short's clients were former H&R Block clients. After the Court issued an injunction restraining Short from soliciting or providing services to certain H&R Block clients, Short turned away approximately forty to forty-five former H&R Block clients. She referred these clients to another tax return preparer, not H&R Block.

---

[1] Short entered into similar employment contracts each year during her tenure with H&R Block.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A.   Breach of contract**

   *1.   Client covenants*

Section 11 of the Employment Agreement provides:

**Noncompetition Covenant.**

> Associate covenants that for two (2) years following the voluntary or involuntary termination of Associate's employment (such period to be extended by any period(s) of violation), Associate shall not, directly or indirectly, provide any of the following services to any of the Company's Clients: (1) prepare tax returns, (2) file tax returns electronically, or (3) provide bookkeeping or any other alternative or additional service that the Company provides within the Associate's district of employment. Company clients are defined as (i) every person or entity whose federal or state tax return was prepared or electronically transmitted by the Company in the Associate's district of employment during the 2003 or 2004 calendar year, and (ii) every person or entity for whom the Company provided bookkeeping or other alternative or additional services within the Associate's district of employment during the 2003 or 2004 calendar year. For purposes of

this definition, Company includes a Block associate in violation of his or her employment agreement. Associate acknowledges that the Company has made available to associates information regarding the geographic boundaries of the district.

Section 12 of the Employment Agreement provides:

**Nonsolicitation Covenant.**

Associate covenants that for two (2) years following the voluntary or involuntary termination of Associate's employment (such period to be extended by any period(s) of violation), Associate shall not directly or indirectly solicit or divert the Company's Clients or otherwise interfere with the Company's continuing relationships with its clients. Company Clients are those defined in Section 11.

H&R Block argues that Short breached the noncompetition and nonsolicitation covenants (client covenants) by soliciting and performing tax preparation services for H&R Block St. Paul district clients within two years of her departure from H&R Block. H&R Block seeks to enforce those restrictive covenants.

The Employment Agreement is "governed by the laws of the State of Missouri without reference to its conflict of laws principles." Under Missouri law, "[a] restrictive covenant in an employment agreement is only valid and enforceable if it is necessary to protect trade secrets and customer contacts, and if it is reasonable as to time and place." *Victoria's Secret Stores, Inc. v. May Dep't Stores Co.*, 157 S.W.3d 256, 260 (Mo. Ct. App. 2004). The party seeking to enforce a covenant bears the burden of demonstrating its validity. *Id.* Here, Short does not dispute the validity of the covenants. Moreover, as discussed in the Court's March 2 Order, H&R Block has demonstrated that the covenants are reasonably limited to a narrow class of people and are reasonable as to time. Thus, the Court concludes that the restrictions are valid.

In addition, H&R Block has submitted evidence that Short violated the restrictive covenants. Specifically, H&R Block has offered evidence that, following her departure, Short

4

used H&R Block's customer information to send postcards to her former H&R Block clients. The postcards opened by acknowledging her involvement in the clients' personal finances, informed the clients that she was leaving H&R Block, indicated that she had concerns about H&R Block's pricing, and invited the clients to call her if they required assistance. The phone number Short provided in the postcards is identical to the number listed as the contact number in AAA's Articles of Incorporation. In addition, H&R Block has submitted evidence that Short prepared tax returns for former H&R Block clients. In 2005, at least 90 out of 127 tax returns prepared by Short were for former H&R Block clients. In 2006, over half of Short's clients were former H&R Block clients.

Short does not argue that she has not violated the restrictive covenants. Nor does she offer any evidence that would demonstrate a genuine issue for trial on H&R Block's breach of contract claim. Viewing the record in the light most favorable to Short, no reasonable fact finder could conclude that Short did not solicit and provide services to former H&R Block clients in violation of sections 11 and 12 of the Employment Agreement.

  2. *Employee covenant*

Section 13 of the Employment Agreement provides:

> **Nonsolicitation of Employees.**
>
> Associate covenants that during Associate's employment and for one (1) year following the voluntary or involuntary termination of Associate's employment, Associate shall not directly or indirectly solicit the Company's employees to leave the Company or to work for a competitor of the Company or otherwise interfere with the Company's continuing relationships with its employees. For purpose of this Agreement, Company employees means persons employed by the Company at the time of the solicitation or at any time during the term of this Agreement.

5

H&R Block argues that Short violated section 13 of the Employment Agreement by hiring Shelley Johnson, a former H&R Block receptionist. Johnson's employment with H&R Block ended on approximately April 15, 2004. Short hired Johnson to work as a receptionist with AAA beginning February 1, 2005. Short argues that she cannot be penalized for hiring Johnson because Johnson was not an employee of, and had no intention of returning to, H&R Block at the time Short contacted her. The Court rejects this argument. On its face, the Employment Agreement prohibits Short from soliciting the "Company's employees to leave the Company or to work for a competitor of the Company" for one year following Short's departure. Moreover, the Employment Agreement defines "Company's employees" as "persons employed by the Company . . . at any time during the term of this Agreement." It makes no exception for seasonal or part-time employees who were employed during the term of the Employment Agreement. Further, Johnson's status at the time Short contacted her does not have any bearing on Short's obligations under the Employment Agreement. The record reveals that Johnson was employed by H&R Block during the term of the Employment Agreement. Therefore, Short was prohibited from employing her for one year following her departure in December 2004. Short hired Johnson in February 2005. Viewing the record in the light most favorable to Short, no reasonable fact finder could conclude that Short did not violate section 13 of the Employment Agreement.

Short also argues that the hiring of Johnson does not violate the employee nonsolicitation clause because Johnson is solely a "clerical" employee, subject to an exception to Missouri's nonsolicitation law. *See* Mo. Rev. Stat. § 431.202 (2006). That section states in relevant part:

> 1.  A reasonable covenant in writing promising not to solicit, recruit, hire or otherwise interfere with the employment of one or more employees shall be enforceable and not a restraint of trade . . . if:

>. . . .
>
>(4) Between an employer and one or more employees, notwithstanding the absence of the protectable interests described [in a previous subsection of 431.202], so long as the covenant does not continue for more than one year following the employee's employment; provided, however, that this subdivision shall not apply to covenants signed by employees who provide only secretarial or clerical services.

On its face, the exception in section 431.202(4) applies only to clerical employees who sign covenants. Here, there is no allegation that Johnson signed a covenant. Instead, H&R Block is suing Short for violating her covenant not to solicit H&R Block employees. Thus, the exception does not alleviate Short of the restrictions in the Employment Agreement.

    3.    *Prior breach*

Short argues that she has a valid defense to H&R Block's breach of contract claim because H&R Block first breached the employment agreement by failing to properly compensate her. In general, a party cannot claim benefits to a contract where it is the first to violate it. *See Supermarket Merch. & Supply, Inc. v. Marschuetz,* 196 S.W.3d 581, 585 (Mo. Ct. App. 2006) (citing *Forms Mfg., Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo. Ct. App. 1985)). With respect to employment contracts containing noncompetition agreements, Missouri courts have recognized that when an employer breaches an employment agreement before an employee allegedly violates a noncompetition provision, the employer is barred from enforcing the restrictive covenant. *See id*. Only a material breach excuses the other party's breach. *See Classic Kitchens & Interiors v. Johnson*, 110 S.W.3d 412, 417 (Mo. Ct. App. 2003); *McKnight v. Midwest Eye Inst. of Kansas City, Inc.*, 799 S.W.2d 909, 916 (Mo. Ct. App. 1990) (noting that an immaterial breach does not impair the benefit to the employer under a restrictive covenant provision).

Short argues that H&R Block breached the Employment Agreement by failing to fully compensate her in 2004. Short further alleges that she experienced difficulties in receiving pay

7

to which she was entitled in other years. H&R Block denies that it paid Short incorrectly. H&R Block further contends that any alleged breach due to inaccurate commissions is not material.

Under the Employment Agreement, Short earned an hourly rate of pay plus additional compensation. Her additional compensation included an "upward adjustment" of "Associate volume" in an amount dependent upon her client retention. In particular, in 2004, Short's baseline retention rate was 81.7%. Thus, if Short's client retention in 2004 exceeded 81.7%, Short would be entitled to a commission.

H&R Block has submitted evidence that it calculated Short's 2004 commission compensation based on the retention of 263 out of 320 clients (82.188%). H&R Block has also submitted evidence of how it arrived at her 2004 commission, including a 2004 compensation sheet for Short, a summary of Short's client retention, and a list naming Short's 2003 clients who returned in 2004. Short disputes H&R Block's computation of her 2004 commission only insofar as she claims it wrongly based her commission on the retention of 246 clients. Short claims she actually retained 284 clients.

While Short now contends that H&R Block's commission compensation fell short of what she was entitled, Short offers no evidence demonstrating the existence of a fact issue. First, Short offers no evidence that H&R Block based its calculations on a retention of 246 clients. Short cites to the deposition testimony of James Ryan, Regional Director of H&R Block, to support this claim. The Court, however, has reviewed the cited deposition testimony and can find nothing that supports this assertion. Short has submitted no other evidence contradicting H&R Block's evidence that it based Short's commission on the retention of 263 clients. Second, Short's evidence that she actually retained 284 clients fails. Her affidavit testimony simply claims that "H&R Block failed to compensate [her] pursuant to the terms of [her] employment

8

agreement in 2004." Short attaches a summary spreadsheet she created in 2004 that purports to document that she retained 284 customers in 2004.[2] Short makes no showing as to the accuracy of the document. Further, Short does not provide the names of any retained clients that she claims were missing from, or offer any evidence specifically countering, H&R Block's list of returning clients.

Short also argues that H&R Block incorrectly reduced her client retention numbers by penalizing her for not retaining up to six deceased clients. However, with respect to four of these clients, Short has not submitted evidence of their deaths. Indeed, Short explains that she "has not yet officially confirmed the date of death for these individuals." H&R Block acknowledges that two of Short's clients died in 2003, after Short prepared their returns. Short, however, has not demonstrated that these clients were improperly categorized. Even if they were, Short has not demonstrated that her commission would have been affected if they were included in H&R Block's retention calculation.

Finally, Short argues she experienced difficulties in receiving pay in years other than 2004 and that she has not been paid for office supply expenses in the amount of $400. To the extent that Short relies on these claims to demonstrate a prior breach on the part of H&R Block, Short's evidence fails as a matter of law. With respect to her claimed difficulties in receiving pay, Short offers only bare accusations in her affidavit and vague testimony in her deposition. Short puts forth no evidence of a breach of the Employment Agreement and makes only a cursory argument with respect to any such alleged breach. With respect to the allegedly unpaid office expenses, Short refers only to her conclusory affidavit testimony. Short directs the Court

---

[2]   The Court notes that Short had this spreadsheet at the time of her deposition; yet at her deposition, Short acknowledged that she did not know if her commission was inaccurate. To the extent that Short's affidavit contradicts her own sworn statements, it may not create a question of material fact. *See, e.g.*, *Dotson v. Delta Consol. Indus., Inc.*, 251 F.3d 780, 781 (8th Cir. 2001).

9

to no other evidence of such amounts unpaid. Therefore, this claim does not support her defense of prior breach.

The Court concludes that Short's evidence does not demonstrate the existence of a genuine issue of material fact that H&R Block materially breached the Employment Agreement prior to Short's breach of the restrictive covenants. Accordingly, Short does not have a valid defense to H&R Block's breach of contract claim.

**B.     Unclean hands**

Short argues that H&R Block's claim for injunctive relief is barred by H&R Block's unclean hands. The doctrine of unclean hands is an affirmative defense. *See Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 789 (8th Cir. 2004). Rule 8(c) of the Federal Rules of Civil Procedure requires that affirmative defenses be pleaded. In general, failure to do so constitutes a waiver of that affirmative defense. *See, e.g.*, *Stephenson v. Davenport Comm. Sch. Dist.*, 110 F.3d 1303, 1307 n.3 (8th Cir. 1997); *Overolt Crop. Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1368 (8th Cir. 1991). An unpleaded affirmative defense raised for the first time in a motion for summary judgment has been held to have been waived under Rule 8(c). *See, e.g.*, *Design Options, Inc. v. BellePoint, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996); *MCI Telecomms. Co. v. Ameri-Tel, Inc.*, 852 F. Supp. 659, 666 (N.D. Ill. 1994). Here, Short did not plead the affirmative defense of "unclean hands" in her Amended Answer.[3] Nor has she identified any relevant exceptions to the general rule. Accordingly, the defense has been waived.[4]

---

[3]     Short did raise some of the arguments used to support her unclean hands defense in opposition to H&R Block's motion for a preliminary injunction, such as H&R Block's delay in seeking to enjoin Short. However, the arguments were raised in the context of the Court's analysis of irreparable harm and not as an affirmative defense.

[4]     Even if Short had not waived the "unclean hands" defense, the alleged conduct on the part of H&R Block does not bear an adequate relation to the merits of the case. *See Slidell, Inc.*

10

**C.     Liquidated damages**

H&R Block argues that it is entitled to liquidated damages in the amount of $77,240.81 for Short's breach of sections 11 and 12 of the Employment Agreement and $5,000.00 for Short's breach of section 13 of the Employment Agreement. The Employment Agreement provides:

> Associate acknowledges that damages for breach of Section . . . 11, 12 and 13 are difficult if not impossible to establish and Associate therefore agrees to liquidated damages as set forth below as a fair and equitable measure of the Company's damages. . . .
>
> ....
>
> (b)     In the event Associate breaches Section 11 or 12 of this Agreement, Associate shall pay to Company an amount equal to two times the Average Fee charged by Associate during the term of this Agreement multiplied by the number of Non-Returning Company Clients multiplied by Associate's Baseline Client Retention Percentage . . . .
>
> ....
>
> (c)     In the event Associate breaches Section 13 through the solicitation of Company employees . . . [and] the solicited employee is not a tax professional, Associate shall pay the Company . . . $5,000 for each solicited non-management employee who leaves the Company.

Under Missouri law, liquidated damages clauses are valid and enforceable, while penalty clauses are invalid. *Taos Constr. Co. v. Penzel Constr. Co.*, 750 S.W.2d 522, 525 (Mo. Ct. App. 1988). For a liquidated damages clause to be valid: (1) the amount fixed as damages must be a reasonable forecast of the harm caused by the breach; and (2) the harm that is caused by the breach must be of a kind difficult to accurately estimate. *Info. Sys. & Networks Corp. v. City of Kansas City, Mo.*, 147 F.3d 711, 714 (8th Cir. 1998). The validity of a liquidated damages

---

*v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1058 (8th Cir. 2006); *Prow v. Medtronic, Inc.*, 770 F.2d 117, 121-22 (8th Cir. 1985). Therefore, it does not bar H&R Block's request for injunctive relief.

clause is viewed at the time the contract was executed. *See Sw. Eng'g Co. v. United States*, 341 F.2d 998, 1001 (8th Cir. 1965).

The relevant provisions of the Employment Agreement provide that liquidated damages for a breach of the client covenants are calculated by multiplying the average fee charged by Short to her H&R Block customers in her final year at H&R Block by two[5]; and then multiplying that number by the number of Short's clients who did not return following her departure, as discounted by Short's expected retention percentage.[6]  Short argues that the formula is unreasonable and penal in nature because the amount sought exceeds her total income from H&R Block in 2004, as well as the total revenue for AAA in 2005 and 2006.

The Court concludes that the damages provided for violations of sections 11 and 12 represent a reasonable forecast of the harm caused by Short's breach and that the harm caused is of a kind difficult to accurately estimate. First, the formula is tied to the number of Short's clients who failed to return to H&R Block after her breach of the covenants; uses Short's average fee charged in 2003; discounts the total damages by Short's retention percentage; and accounts for two years of loss for each client. The Court concludes that this estimation of harm is reasonable. Second, the future damages associated with a breach of the covenants are difficult to calculate because the loss of H&R Block clients will have a recurring impact. While the formula accounts for the loss of clients for a period of two years, H&R Block has represented that some clients become long-term clients who stay with H&R Block for many years. There is no way to

---

[5]  H&R Block argues that multiplying her average fee by two accounts for two years of missing clients.

[6]  H&R Block submitted evidence that it calculated its liquidated damages pursuant to this formula: ($315.14 (average fee) x 150 (non-returning clients) = $47,271 x 2 = $94,542 x .817 (Short's retention percentage) = $77,240.81). Short does not dispute the accuracy of this calculation.

determine how long a particular client might have stayed with H&R Block and what each clients' future fees might have totaled absent Short's breach of the covenants. *See, e.g.*, *Overolt Crop. Ins. Serv. Co.*, 941 F.2d at 1370 (discussing the recurring impact of losing a customer). Moreover, there is no way to determine how many referrals H&R Block would have received from the lost clients. Thus, the Court concludes that H&R Block is entitled to $77,240.81 in liquidated damages.[7]

H&R Block also seeks liquidated damages for Short's breach of the employee nonsolicitation clause in hiring Johnson. The Employment Agreement provides for $5,000 for each solicited non-management employee. H&R Block argues that $5,000 represents a reasonable calculation of damages caused by the loss of Johnson. The Court disagrees. H&R Block has made no showing that the damages associated with the loss of a receptionist are of a kind that are difficult to accurately calculate or that $5,000 is a reasonable forecast of any harm. Thus, the Court declines to award liquidated damages for Short's breach of section 13.

**D.    Injunctive relief**

Short argues that H&R Block is not entitled to both injunctive and monetary relief. However, at least one court, applying Missouri law, has held that the recovery of both monetary damages and injunctive relief can be cumulative where the remedy at law is inadequate. *See Home Shopping Club, Inc. v. Roberts Broad. Co.*, 989 S.W.2d 174, 180 (Mo. Ct. App. 1998). In that case, the court examined the intention of the parties as "deduced from the whole instrument

---

[7]    The Court notes that Short's reference to her income and AAA's revenue is an inappropriate measure of whether the liquidated damages clause is reasonable. A liquidated damage clause must be a reasonable estimate of harm to H&R Block. *See, e.g.*, *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1345 (Fed. Cir. 2004) (noting that the reasonableness of a damages provision is measured relative to an estimation of the compensation that would be required to negate the harm to the nonbreaching party).

13

and the surrounding circumstances" to determine whether a liquidated damages provision forecloses equitable relief. *Id*. Here, the Employment Agreement specifically provides for the availability of "injunctive relief . . . in addition to all other remedies available at law or equity." The parties intended that, in the event of a breach, Short would be held to the provisions of the noncompetition and nonsolicitation covenants and that H&R Block would be entitled to liquidated damages. Moreover, money damages alone would be inadequate due to the recurring and uncertain nature of the harm. Indeed, an award of liquidated damages for the clients who failed to return to H&R Block would be inadequate if Short were allowed to solicit additional H&R Block clients going forward. Accordingly, H&R Block is entitled to both an injunction and liquidated damages.

H&R Block argues that it is entitled to injunctive relief additional to that awarded in the March 2 Order. Sections 11 and 12 of the Employment Agreement provide that the two-year noncompetition and nonsolicitation covenants will be "extended by any period(s) of violation." Short does not dispute this provision of the Employment Agreement or offer any persuasive arguments as to why it should not be enforced. Accordingly, the Court enjoins Short from soliciting or providing service to customers for whom the H&R Block St. Paul district performed tax, bookkeeping, or other services during the 2003 or 2004 calendar years until March 2, 2008.[8]

### E.  Attorney fees

H&R Block argues that it is entitled to reasonable attorney fees and costs under the Employment Agreement. The Court notes that H&R Block moved for summary judgment on its breach of contract claim against Short; there remain two outstanding counts against her and a

---

[8]  H&R Block does not request injunctive relief related to Johnson's employment with AAA. Therefore, the Court declines to grant such relief. The Court also notes that such relief would be inappropriate because the injury to Johnson would greatly outweigh any benefit to H&R Block.

counterclaim asserted against H&R Block. Therefore, the Court declines to rule on the availability or amount of attorney fees at this time.

### III.   CONCLUSION

In short, the Court concludes that Short breached sections 11, 12 and 13 of the Employment Agreement; Short has no defense to her breach; H&R Block is entitled to liquidated damages with respect to Short's breach of sections 11 and 12; and H&R Block is entitled to injunctive relief. Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. H&R Block's motion for summary judgment [Docket No. 36] is GRANTED IN PART and DENIED IN PART.

2. Short shall not solicit or provide service to customers for whom the H&R Block St. Paul district performed tax, bookkeeping, or other services during the 2003 or 2004 calendar years.

3. The restraints imposed in this Order shall be effective until March 2, 2008, and are binding upon Short, her agents, servants, employees, and attorneys, and upon those persons in active concert or participation with her who receive actual notice of the Order by personal service or otherwise.

4. Short shall pay H&R Block $77,240.81 in liquidated damages.

Dated:  November 29, 2006

                                                                                             s/ Joan N. Ericksen
                                                                                             JOAN N. ERICKSEN
                                                                                             United States District Judge